UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA
------------------------------------------------------------------------X
DEBORA L. DENNIS,

                                                                                                         Civil Action No.
                            Plaintiff,


VNA HOSPICE                                                                    COMPLAINT
                                                                                                  Trial by Jury

                            Defendants.
------------------------------------------------------------------------X

Plaintiff, DEBORA L. DENNIS, as and for her Complaint against the above Defendants respectfully alleges upon information and belief as follows:

## COMPLAINT

Plaintiff, Debora L. Dennis, as and for her complaint against the above defendant, respectfully alleges upon information and belief as follows.

## NATURE OF THE CASE

1.      Plaintiff complains pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000(e) to 2000(e-17) amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166 ("Title VII"), and the Pennsylvania Human Relations Act as amended, 43 P.S. §§ 951, et seq.("PHRA") and the Philadelphia Fair Practices Ordinance, Section 9-1100 et seq. ("PFPO") and seeks damages to redress the injuries plaintiff has suffered as a result of being harassed, discriminated against on the basis of her gender, race and color, and retaliated against by her employer for complaining of harassment and discrimination.

## JURISDICTION AND VENUE

2. This action involves a question of federal law under Title VII of the Civil Rights Act of 1964.

Venue is proper in this district based upon the fact that the plaintiff was employed by defendant within the County of Philadelphia, Commonwealth of Pennsylvania, within the Eastern District of Pennsylvania. Additionally, the events in issue took place in Philadelphia County, Pennsylvania, within the Eastern District of Pennsylvania, and the plaintiff lives in the County of Philadelphia, in the Commonwealth of Pennsylvania.

On or about October 30, 2020, plaintiff dual-filed charges with the EEOC and PHRC against defendant as set forth herein.

On or about November 2, 2020, the Equal Employment Opportunity Commission issued plaintiff a right to sue letter.

This action is being commenced within 90 days of receipt of the EEOC right to sue letter.

## PARTIES

3. Plaintiff, Debora L. Dennis (hereinafter also referred to as plaintiff and "DENNIS") is an African American female who is a resident of the Commonwealth of Pennsylvania.

8. At all times material, defendant, Visiting Nurse Association of Greater Philadelphia (hereinafter referred to as defendant and "VNA") is a domestic corporation formed under the laws of the Commonwealth of Pennsylvania.

9. At all times material, defendant, VNA, operates a business known as VNA Philadelphia located at 3300 Henry Avenue, Philadelphia, PA 19129.

## **MATERIAL FACTS**

10. On or around January 6, 2020, plaintiff was hired as a hospice admissions nurse.

11. Within the first few months of her hiring, plaintiff requested personal protection equipment, which is used in the normal course of business as a hospice admissions nurse.

12. Tammy Berry (Caucasian), was an employee and supervisor of the plaintiff for VNA, was responsible for providing the personal protection equipment. Ms. Berry asked plaintiff what had happened to the personal protection equipment that plaintiff was given at the start of her employment. Plaintiff was also told that the equipment was to be reused (despite the possibility that it had been contaminated).

13. Plaintiff further stated to Ms. Berry that plaintiff was never instructed to reuse the personal protection equipment and to keep the used equipment for further use.

14. In response, Ms. Berry (Caucasian) belittled the plaintiff in the entrance/lobby of the facility and stated that "you people are just gonna have to learn to listen" (an obvious statement made due to plaintiff being African American. Plaintiff responded by asking who "you people are"? And in response, Ms. Berry rolled her eyes backwards and shook her head in an obvious derogatory way. The discriminatory behavior continued, and retaliation began from other staff members who had witnessed the discriminatory treatment of plaintiff. Those employees were emboldened by Berry's statement and behavior.

15. On or about June 5, 2020, plaintiff was required to go into an area near the patient's home where another nurse Leanne (Last name unknown) (Caucasian) was permitted to avoid because gunshots were reported the previous day at this patient's location. Plaintiff was forced to go to the patient's home. On another occasion the plaintiff was in her vehicle and on the telephone discussing a patient admission when active gunshots were heard.

Renee Savares (Vice President) and Dora Morrow (Supervisor) were discussing patient care with the plaintiff during that call. Plaintiff requested that she be permitted to leave the area due to the gun shots and being in an unsafe area. Savares asked the plaintiff if the patient consent forms had been signed. Plaintiff reiterated to Savares that there was active gun fire, and it was not safe to be in the area of the patient's home and unsafe to re-enter the patients' home. Nevertheless, plaintiff was instructed to go back to the home and get the consents signed and stated that "you should be fine" in reply.

16. On or about June 14, 2020, another Caucasian nurse, as reported by Kendra (last name unknown), drove through a client's neighborhood but chose not to enter the client's home because she thought she was being looked at funny due to the resident being black. The nurse who is Caucasian, was allowed to leave the area. Plaintiff was responsible to go to the same patients home the next day (this was during civil unrest period due the rioting that resulted during the police shooting). Plaintiff asked "why, because I'm black"? and no reply was given as to plaintiff's request. But it was obvious that plaintiff was forced to return because of her race/color.

17. On or about June 18, 2020, plaintiff met with Renee Savarese and supervisor Dora Morrow for an evaluation. Both employees of VNA were Caucasian. Savarese asked how plaintiff felt if her probationary period was extended. In response, plaintiff asked why that was being asked since plaintiff had already passed her probationary period and had no performance deficiencies. Savarese stated that there were time management issues but could not identify any one incident in making that comment. Plaintiff highlighted all the recent events, the pandemic, civil unrest, curfews, and recent changes in standards of practice for safety as per CDC

guidelines as it related to COVID pandemic. Renee Savarese still wanted to continue with disciplinary actions (continued probationary period) and follow up meeting.

Prior to this meeting, Savarese announced in front of the staff that she was meeting with plaintiff and Supervisor Dora later in the day.  This was extremely upsetting to the plaintiff as she was being singled out.  Plaintiff told Savarese how that made her feel (embarrassed and humiliated). Savarese replied that there was no problem with her doing so and that should not be questioned about it. Instead, she wanted to know why plaintiff was reading charts in detail prior to seeing the patients. Renee Savares could not identify any time management issues but kept offering a meeting with the educator (which is Tammy Barry's role) Plaintiff reiterated that some standards of practice had changed due to the pandemic and that CDC guidelines were being followed.

 18. Savarese next asked if plaintiff was willing to take on additional duties outside of the scope of her position.  In response, plaintiff stated she had no experience in that area. Savarese wanted to Plaintiff to see a high liter flow oxygen patient that was on the hospital inpatient unit who was also COVID positive (even though she had Caucasian nurses assigned for that job title as inpatient hospital hospice nurses) Plaintiff was aware that COVID positive patients on high liter flow oxygen was highly contagious as it relates to transmission of disease. No explanation was given for the request.  Plaintiff told Savarese that she was being retaliated against due to her race/color and Savarese quickly replied no she was not, and a follow-up meeting was scheduled for plaintiff.

19. On or about July 23, 2020, plaintiff reported to the office for the scheduled meeting.  Tammy Barry was in the front at the receptionist desk and was nearby when the receptionist called back to Dora Morrow. Dora instructed the receptionist to send plaintiff back for the meeting. Once plaintiff started to walk towards the area of the meeting, Tammy cut in

front of plaintiff and put her hand out to stop plaintiff and stated, "you are not allowed to come back here". The plaintiff replied that she had a scheduled meeting. Tammy responded, "I don't care, you are not coming back here". Plaintiff saw another nurse, Ella (Caucasian), walk into the administrative area without issue. Plaintiff responded that Ella just walked in the back without issue and Barry replied "well, you're not Ella". Plaintiff was then instructed, even though she was called back for her meeting, to wait back at the front for her meeting with Dora Morrow. The plaintiff was humiliated and discriminated in front of other staff members that were in the hallway and at the receptionist desk. Plaintiff was required to walk back, after being demeaned by Tammy, in front of coworkers.

20. Plaintiff was then instructed by Barry to wait out front. Morrow then came out to meet with plaintiff and told her that she had a wonderful review, but the defendant needed her to do more. Plaintiff then informed Morrow of the mistreatment by Barry and the discriminatory conduct.

21. On or about August 6, 2020, plaintiff contacted Lisa Barker (human resources manager) to inform her that plaintiff was resigning because of the ongoing discrimination and the lack of relief after her complaints.

**AS A FIRST CAUSE OF ACTION
FOR DISCRIMINATION UNDER TITLE VII**

22. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint

23. Title VII states in relevant parts as follows: § 2000e-2. *[Section 703]*(a) Employer practices It shall be an unlawful employment practice for an employer – (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any

individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."

24. Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. § 2000e *et seq.*, by discriminating against Plaintiff because of her sex/gender.

### AS A SECOND CAUSE OF ACTION
### FOR DISCRIMINATION UNDER TITLE VII

25. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

26. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. $2000e-3(a) provides that it shall be unlawful employment practice for an employer:

"(1) to … discriminate against any of his employees … because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

27. Defendants retaliated against Plaintiff because she opposed and reported Defendants' unlawful employment practices.

### AS A THIRD CAUSE OF ACTION
### FOR DISCRIMINATION
### UNDER STATE LAW

28. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

29. The PHRA § 955 provides that it shall be an unlawful discriminatory practice:

"(a) For any employer because of the race, color, religious creed, ancestry, age, sex,

national origin or non-job related handicap or disability or the use of a guide or support animal because of the blindness, deafness or physical handicap of any individual or independent contractor, to refuse to hire or employ or contract with, or to bar or to discharge from employment such individual or independent contractor, or to otherwise discriminate against such individual or independent contractor with respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract, if the individual or independent contractor is the best able and most competent to perform the services required."

30. Defendant engaged in an unlawful discriminatory practice by discriminating against the Plaintiff because of her race and/or color.

31. Plaintiff hereby states her claim against Defendants under all of the applicable paragraphs of the PHRA § 955.

## AS A FOURTH CAUSE OF ACTION
## FOR RETALIATION
## UNDER STATE LAW

32. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

33. PHRA § 955(d) provides that it shall be an unlawful discriminatory practice: " For any person, employer, employment agency or labor organization to discriminate in any  manner against any individual because such individual has opposed any practice forbidden by this act, or because such individual has made a charge, testified or assisted, in any manner, in any investigation, proceeding or hearing under this act."

34. Defendants engaged in an unlawful discriminatory practice by discharging, retaliating, and otherwise discriminating against the Plaintiff because of Plaintiff's opposition to the unlawful employment practices of her employer.

### AS A FIFTH CAUSE OF ACTION
### FOR AIDING & ABETTING
### UNDER STATE LAW

35. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

36. PHRA § 955(e) provides that it shall be an unlawful discriminatory practice: " For any person, employer, employment agency, labor organization or employee, to aid, abet, incite, compel or coerce the doing of any act declared by this section to be an unlawful discriminatory practice, or to obstruct or prevent any person from complying with the provisions of this act or any order issued thereunder, or to attempt, directly or indirectly, to commit any act declared by this section to be an unlawful discriminatory practice."

37. Defendants engaged in an unlawful discriminatory practice in violation of PHRA §955(e) by aiding, abetting, inciting, compelling and coercing the discriminatory conduct.

### AS A SIXTH CAUSE OF ACTION FOR
### DISCRIMINATION UNDER THE PHILADELPHIA
### CITY ADMINISTRATIVE ORDINANCE

38. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

**39.** The Philadelphia Fair Practices Ordinance § 9-1103(1) provides that "It shall be an unlawful discriminatory practice: "It shall be an unlawful employment practice to deny or interfere with the employment opportunities of an individual based upon his or her race, ethnicity, color, sex (including pregnancy, childbirth, or a related medical condition), sexual orientation, gender identity, religion, national origin, ancestry, age, disability, marital status, familial status, genetic information, or domestic or sexual violence victim status, including, but not limited to, the following: (a) For any employer to refuse to hire, discharge, or otherwise discriminate against any individual, with respect to tenure, promotions, terms, conditions or privileges of employment or with respect to any matter directly or indirectly related to employment."

**40.** Defendants engaged in an unlawful discriminatory practice in violation of Philadelphia Fair Practices Ordinance § 9-1103(1) by creating and maintaining discriminatory working conditions, and otherwise discriminating against Plaintiff because of Plaintiff's sex/gender.

**41.** Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of Philadelphia Fair Practices Ordinance Chapter 9-1100.

### AS A SEVENTH CAUSE OF ACTION FOR DISCRIMINATION UNDER THE PHILADELPHIA CITY ADMINISTRATIVE ORDINANCE

42. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

43. The Philadelphia Fair Practices Ordinance § 9-1103(1)(g) provides that it shall be unlawful discriminatory practice: " For any person to harass, threaten, harm, damage, or otherwise penalize, retaliate or discriminate in any manner against any person because he, she or it has complied with the provisions of this Chapter, exercised his, her or its rights under this Chapter, enjoyed the benefits of this Chapter, or made a charge, testified or assisted in any manner in any investigation, proceeding or hearing hereunder"

44. Defendants engaged in an unlawful discriminatory practice in violation of Philadelphia Fair Practices Ordinance § 9-1103(1)(g) by discriminating against the Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.

### AS AN EIGHTH CAUSE OF ACTION FOR DISCRIMINATION UNDER THE PHILADELPHIA CITY ADMINISTRATIVE ORDINANCE

45. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

46. The Philadelphia Fair Practices Ordinance § 9-1103(1)(h) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, induce, compel or coerce the doing of any unlawful employment practice or to obstruct or prevent any person from complying with the provisions of this Section or any order issued hereunder or to attempt directly or indirectly to commit any act declared by this Section to be an unlawful employment practice."

47. Defendants engaged in an unlawful discriminatory practice in violation of Philadelphia Fair Practices Ordinance § 9-1103(1)(h) by aiding, abetting, inciting, compelling, and coercing the above discriminatory, unlawful and retaliatory conduct.

## JURY DEMAND

Plaintiff requests a jury trial on all issues to be tried.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, including but not limited to all emotional distress and back pay and front pay, punitive damages, liquidated damages, statutory damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

Dated: Philadelphia, Pennsylvania
December 10, 2020

DEREK SMITH LAW GROUP, PLLC
*Attorneys for Plaintiff*

By: SCOTT E. DIAMOND

Scott E. Diamond, Esq.
1835 Market Street, Suite 2950
Philadelphia, PA  19102
215-391-4790